IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMPLOYERS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

FAST WRAP RENO ONE, LLC; ALTEN CONSTRUCTION, INC.; and IRONSHORE SPECIALITY INSURANCE COMPANY,

Defendants.

No. C 17-03837 JSW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Plaintiff Employers Mutual Casualty Company ("EMC") regarding the issue of whether EMC owes an obligation to defend or indemnify its insured, Fast Wrap Reno One, LLC ("Fast Wrap").

**BACKGROUND**

This action arises from a construction project that resulted in damages to a building, which was caused by rain penetrating a faulty containment barrier. Third-Party Plaintiff Alten Construction, Inc. ("Alten") was the general contractor for the San Francisco Unified School District's Burton High School Modernization Project located at 400 Mansell Street, in San Francisco, California ("the Project"). (Complaint ¶ 8.)

Fast Wrap entered a contract with Alten dated February 2, 2016 to provide a containment barrier for weatherization while the Project was ongoing. (*Id*.) The temporary structure was assembled on February 22, 2016 and a storm system effected the Project between March 4 through 13, 2016, causing water damage to Building C of the Project. (*Id.*)

The contract between Alten and Fast Wrap provided in part that Fast Wrap would provide, at its own expense, insurance on all of its operations. (*Id.* at ¶ 9; *see also* Dkt. No. 56-3, Ex. 10.) The contract required Fast Wrap to indemnify and hold harmless Alten for "all claims, demands, causes of actions and liabilities of every kind and nature whatsoever arising out of or in connection with [Fast Wrap's] operations performed under" the agreement. (*Id.*)

EMC issued general liability insurance to Fast Wrap which contained a "wrap-up exclusion" provision. (Dkt. No. 56-3, Ex. 1 at EMC 002002; Ex. 2 at EMC 002071[1]; Complaint ¶ 16.) L/P, acting as agent or broker for EMC, provided a quote and a renewal comparison which did not include the wrap-up exclusion language. (Declaration of John Podesta, Ex. B.) L/P also provided to Fast Wrap the requested certificate of insurance certifying that coverage was in place for the Project and with the additional insured endorsement, but without indication of the wrap-up exclusion. (*Id.*)

The prime contract between Alten and the school district provided that the contractor would maintain comprehensive commercial general liability or wrap-up insurance. (Complaint ¶ 10.) Alten's Wrap-Up policy was issued by Ironshore Specialty Insurance Company ("Ironshore'). (*Id.* at ¶ 14.)

During the construction project, the containment barrier erected by Fast Wrap was damaged in a severe storm and rain caused significant damage to the building. The school district asserted a claim for property damage in excess of $3 million to Alten, which Alten tendered to Fast Wrap. (*Id.* at ¶ 11.) Alten alleged that Fast Wrap had failed to properly design and construct the containment barrier, and that the contract between them required Fast Wrap to indemnify Alten and to name them as an additional insured on Fast Wrap's insurance policy. (*Id.*)

---

[1] The same exclusion in the CGL policy was included in the umbrella policy issued to Fast Wrap.

On April 21, 2017, Alten filed a complaint against Fast Wrap in the San Francisco Superior Court of the State of California, and filed an amended complaint on June 13, 2017, alleging claims for breach of contract, breach of express warranty, breach of implied warranty, expressed indemnity, equitable indemnity, negligence, misrepresentation, contribution, declaratory relief, and disgorgement (the "Underlying Action"). (Dkt No. 56-3, Ex. 5; Dkt. No. 44-2, Ex. A at 1-14.) The amended complaint alleges that Alten reached a settlement with the school district for $2.3 million to resolve the claim. (Complaint ¶ 13.)

On July 6, 2017, EMC filed a complaint for declaratory relief before this Court against Alten, Fast Wrap, and Ironshore. (Complaint, Dkt. No. 1.) EMC contends that it does not owe a duty to defend Alten's claim against its insured, Fast Wrap. On the same day, Ironshore filed a third-party complaint against EMC and Fast Wrap for declaratory relief, subrogation, equitable subrogation, equitable indemnity, and contribution. (Ironshore Third-Party Complaint, Dkt. 13.) On August 14, 207, Alten filed a third-party complaint against Fast Wrap and EMC for the same claims in Superior Court. (Alten Third-Party Complaint, Dkt. No. 18.)

EMC moves for summary judgment or partial summary judgment regarding its duty to defend and indemnify.

The Court shall address additional relevant facts in the remainder of its order.

**ANALYSIS**

**A.     Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

3

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(e)(3).

**B.    Insurance Coverage Standards.**

The motion seeks to resolve whether EMC owed Fast Wrap a duty to defend and indemnify in the underlying lawsuit. California's substantive insurance law governs in this diversity case. *State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 405 (9th Cir. 1989).[2] In a dispute over insurance policy coverage, the burden is on the insured to bring the claim within the basic scope of coverage. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995). Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. The carrier must defend a suit which potentially seeks damages within the coverage of the policy." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (quoting *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 296 (1993)). The insured "need

---

[2] The policy at issue was issued in Nevada to a Nevada insured, but there is no indication that the policy contains a choice of law provisions designating Nevada law as applicable. In any regard, both parties presume there is no conflict between substantive Nevada and California law in their briefing of the governing insurance coverage issues.

4

only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose,* 6 Cal. 4th at 300. Furthermore, "'the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer.'" *Hudson*, 624 F.3d at 1267 (quoting *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 606 (1986)). In instances where "'there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer.'" *Id.* (quoting *CNA*, 176 Cal. App. 3d at 607). However, "an insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995). "Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon facts known to the insurer at the inception of the suit." *Id.*

"Insurance policies are contracts to which ordinary rules of contractual interpretation apply." *Maryland Cas. Co. v. Nationwide Ins. Co.*, 65 Cal. App. 4th 21, 28 (1998). To interpret the meaning of the policy language, courts must first look at the written provisions of the policy. "If the policy language is clear and explicit, it governs. . . . When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted).

Policy exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor of coverage. *MacKinnon*, 31 Cal. 4th at 648; *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998). An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. Any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. *MacKinnon*, 31 Cal. 4th at 648. Accordingly, "[i]n resolving the question of whether a duty to defend exists . . . the insurer has a higher burden that the insured." *American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 27 (2009). "[T]he insured need only show that the underlying claim may fall within policy coverage;

5

the insurer must prove it cannot; the insurer, in other words, must present undisputed facts that eliminate any possibility of coverage." *Id.* (citations omitted).

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions. *E.M.M.I., Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Any ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's reasonable expectations. *Id.*

**C.  Coverage Dispute.**

The insurance policy issued by EMC to cover its insured, Fast Wrap, included a provision which states, in pertinent part:

> The following exclusion is added:
>
> This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included with the "product-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

(Dkt. No. 56-3, Ex. 1 at EMC 002002.)

In this matter, there is no dispute that Alten had secured a wrap-up policy from Ironshore for the Project. However, there is also no dispute that Fast Wrap was not enrolled in the wrap-up policy and its work was not included in its coverage. Accordingly, the terms of the EMC exclusion, intended to avoid duplicative coverage, do not apply in this circumstance. The wrap-up policy acquired by the prime contractor/project manager must include coverage for the subcontractor or its work in order for the exclusion preventing duplicative coverage to apply. *See, e.g., First Mercury Ins. Co. v. Waterside Condominium Ass'n*, 2013 WL 6383883, at *9 (D. Oregon Dec. 5, 2013) (holding that a wrap-up policy requires coverage for subcontractors and a coverage period spanning the statutory limitations period); *see also Structure Tone, Inc. v. National Cas. Co.*, 2014 N.Y. Misc. LEXIS 862, at *13 (N.Y. Feb. 27, 2012) (holding that the wrap-up policy must cover the operations of the subcontractor to enforce the exclusion: "The language of the exclusion does not require that [the subcontractor] be enrolled in the wrap-up program, but that a wrap-up insurance program exist and *cover a bodily injury that arose from [the subcontractor's] operations*."); *see also D.R. Horton Los Angeles Holding Co., Inc. v. American Safety Indemnity Co.*, 2012 WL 33070, at *20 (S.D. Cal.

Jan. 5, 2012) (holding that the subcontractor's wrap-up exclusion does not apply to preclude coverage where the wrap up insurance does not cover subcontractor's work). Because neither Fast Wrap nor its operations were covered by Alten's general liability wrap-up policy, the exclusion preventing duplicative coverage in the EMC policy does not apply. Accordingly, the Court DENIES EMC's motion for summary judgment on this basis.

**D.     Other Disputed Issues of Material Fact Preclude Summary Judgment.**

In the alternative, the Court finds the motion for summary judgment must be denied on the basis that there are multiple other issues of material fact in dispute precluding judgment in this matter.

Fast Wrap was a client of L/P from whom it purchased the EMC insurance policies. L/P provided Fast Wrap with a certificate of insurance which it provided to Alten in order to satisfy its contractual indemnity agreement. The evidence regarding whether L/P served as an agent for EMC with authority to bind the company or merely as an insurance broker without agency is disputed. The evidence regarding when the wrap-up exclusion was incorporated as a provision to the insurance policy which may have required additional disclosures, and by whom, remains a matter of disputed fact. The issue of whether the wrap-up exclusion is operative – due to the potential agency of L/P, the representations in the certificate of insurance, and the timing of the exclusion's incorporation into the final contract with EMC – remains a matter of some dispute.

Further, the parties dispute whether Fast Wrap, although designated as the subcontractor in its contract with Alten for the Project, actually acted as a subcontractor under the wrap-up policy acquired by Alten, or rather acted as a material supplier to the Project.

Lastly, the parties dispute whether the scope of the Project included the damage done to the existing building. The parties contend the Project contract enumerates the remodeling efforts but may not specifically designate the existing buildings as within the scope of the Project. There is some dispute regarding whether the damage itself was within the parameters of the work promised.

The material disputes of fact preclude entry of declaratory judgment for EMC and are further support for the Court's denial of its motion for summary judgment.

## CONCLUSION

For the reasons stated, the Court DENIES EMC's motion for summary judgment. The parties are ordered to submit a joint proposed schedule by no later than February 15, 2019 setting out all pretrial dates.

**IT IS SO ORDERED.**

Dated: February 7, 2019

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE